O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| CARL C. COOMER, | ) | Case No. CV 06-01811-MLG |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the | ) | |
| Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Carl C. Coomer ("Plaintiff") seeks review of the Commissioner's final decision denying his application for disability insurance benefits ("DIB") pursuant to Title II of the Social Security Act. For the reasons stated below, the Commissioner's decision shall be affirmed and this action shall be dismissed with prejudice.

I.   **Factual and Procedural Background**

Plaintiff was born on June 20, 1950. (Administrative Record ("AR") at 32). He has more than a high school education and relevant work experience as a tractor trailer driver and material handler. (AR at 32).

Plaintiff filed an application for DIB on April 23, 2003, alleging that he had been disabled since December 15, 2001, due to degenerative disc disease of the lumbar spine, a right leg impairment, and a mental impairment.[1]  (AR at 20, 131).  The Social Security Administration denied this application at the initial and reconsideration levels.  (AR at 20, 42-45, 47-51).

An administrative hearing was held before Administrative Law Judge Kevin M. McCormick (the "ALJ") on February 5, 2005.  (AR at 277-311). Plaintiff, who was represented by counsel, testified at the hearing. (AR at 280-98, 300-01, 310-11). On April 29, 2005, the ALJ issued a decision finding that Plaintiff was not under a disability, as defined in the Social Security Act.  (AR at 20-34).  The ALJ determined that Plaintiff had not engaged in substantial gainful activity since his alleged onset date and that Plaintiff suffers from the "severe" impairments of degenerative disc disease, right L5 radiculopathy, and an old compression fracture, but that Plaintiff's impairments did not meet or equal one of the of the listed impairments in Appendix 1, Subpart P, Regulations No. 4 ("the Listings").  (AR at 25, 27).  The ALJ assessed Plaintiff with a residual functional capacity to perform the full range of medium work (*i.e.,* lifting and carrying 50 pounds occasionally and 25 pounds frequently, standing and/or walking for a total six hours in an eight-hour workday, and sitting for a total six hours in an eight-hour workday).  (AR at 28, 32).  Based on this residual functional capacity, the ALJ determined that Plaintiff was capable of performing his past

---

[1]  Plaintiff filed a prior application on February 21, 2002.  (AR at 20, 71-73).  That application was denied at the initial level on April 23, 2002.  (AR at 20, 38-41, 71-73).  Plaintiff did not appeal the denial.  (AR at 20).

relevant work as a tractor trailer driver and material handler, to the extent those jobs were actually performed and required lifting and/or carrying material weighing 50 pounds or less. (AR at 32). In addition, the ALJ found that given Plaintiff's age, education, and residual functional capacity, Plaintiff has the capacity to perform work that exists in significant numbers in the national economy, based on Grid Rules 203.22 and 203.23. (AR at 32); 20 C.F.R. Appendix 2, §§ 203.22, 203.23. The ALJ further found that Plaintiff would be able to make a vocational adjustment to other work, such as hand packager, general worker, furniture cleaner, electrical worker, burr grinder, office helper, and floor worker. (AR at 32-33).

On February 13, 2006, the Appeals Council denied review. (AR at 7-9). Therefore, the ALJ's decision became the final decision of the Commissioner. (AR at 7). Plaintiff then commenced this action for judicial review.

The parties filed a Joint Stipulation on December 7, 2006. Plaintiff raises the following arguments:

1. The ALJ erred by failing to find that Plaintiff's mental impairment was severe.

2. The ALJ failed to properly assess Plaintiff's residual functional capacity.

Plaintiff seeks remand for a payment of benefits or, in the alternative, remand for a new administrative hearing and further development of the record. (Joint Stipulation at 40). The Commissioner requests that the ALJ's Decision be affirmed. (Joint Stipulation at 40). The Joint Stipulation has been taken under submission without oral argument.

\\\

\\\

3

II.  **Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's or ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). It is more than a scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-721.

III.  **Discussion**

A.  **Mental Impairment**

At step two of the sequential analysis, the ALJ found that Plaintiff suffers from "severe" impairments of degenerative disc disease, right L5 radiculopathy, and an old compression fracture. (AR at 25). Although the ALJ acknowledged the existence of medically determinable impairments of depressive disorder, NOS, alcohol dependence in partial remission, and cannabis abuse, the ALJ concluded that these impairments were not severe. (AR at 25). In particular, the ALJ found

4

that Plaintiff's mental impairments caused no more than a mild limitation in activities of daily living, mild limitation in social functioning, mild limitation in maintaining concentration, persistence or pace, and no episodes of decompensation. (AR at 25-26). The ALJ's step two finding is supported by substantial evidence.

Plaintiff's treatment records do not suggest that Plaintiff had any functional limitations due a mental impairment. *See* 20 C.F.R. § 404.1520(c)(an impairment is severe only if it significantly limits an individual's abilities to perform basic work activities); *see also Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994)(an impairment should be found to be "non-severe" when the evidence establishes merely a slight abnormality, with no more than minimal effect on ability to work). On December 11, 2003, Imdad Ahmad, M.D., Plaintiff's treating physician at the Veterans Administration ("VA") hospital in Loma Linda, diagnosed Plaintiff with depression, probably situational. (AR at 176). Dr. Ahmad also noted, however, that an evaluation for depression revealed that Plaintiff did not meet the criteria for depression. (AR at 177). On December 29, 2003, Plaintiff underwent a psychological evaluation at the Behavioral Health Clinic in the VA hospital. (AR at 244-48). Although Plaintiff received a diagnosis of depressive disorder NOS (rule out substance induced mood disorder vs. major depressive disorder), psychology intern Lisa McDonald, M.A. and staff psychologist Sandra Lawrence, Ph.D. assessed Plaintiff with no significant functional limitations. (AR at 244-48). Instead, they gave Plaintiff a Global Assessment of Functioning ("GAF") score of 65, which indicated only mild symptoms or some difficulty with social and occupational functioning. (AR at 247); *see* Diagnostic and Statistical Manual of Mental Disorders (4th ed.) ("DSM-IV") at 32. They also noted that Plaintiff had declined

further treatment at the Behavioral Health Clinic and had not taken his medication as prescribed. (AR at 245, 248). The findings of Dr. Ahmad, Ms. McDonald and Dr. Lawrence are consistent with the ALJ's conclusion that Plaintiff's mental impairments are not severe. (AR at 25); 20 C.F.R. § 404.1520(c); *Corrao*, 20 F.3d at 949.

Plaintiff contends that the ALJ improperly relied on the VA hospital records, and failed to give proper consideration to other relevant medical evidence in assessing his mental impairment. In support of his argument, Plaintiff relies on the opinions of consultative psychiatric examiner Lyle Forehand, M.D. and state agency physician Paul Balson, M.D. (Joint Stipulation at 19-20)

In February 2003, Dr. Forehand examined Plaintiff and diagnosed him with major depressive disorder, single episode, moderate. (AR at 208-12). Dr. Forehand opined that Plaintiff had "moderate" limitations in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and "moderate" limitations in his ability to perform at a consistent pace due to his depressive symptomatology. (AR at 211). Dr. Forehand also assessed Plaintiff with a GAF score of 49, indicating "[s]erious symptoms . . . OR any serious impairment in social occupational or school functioning." DSM-IV at 32; (AR at 211).

Dr. Baulson completed a mental residual functional capacity assessment of Plaintiff in March 2004. (AR at 226-28). He found that Plaintiff was "not significantly" to "moderately" limited in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and in the ability to perform at a consistent pace without an unreasonable number and length of rest periods. (AR at 227). On a psychiatric review technique form, Dr.

Baulson reported that Plaintiff had less than mild limitations in activities of daily living and in maintaining social functioning, and mild to moderate limitations in maintaining concentration, persistence and pace.  (AR at 223).

In finding that Plaintiff's mental impairments were not severe, the ALJ relied on the VA hospital records.  (AR at 26).  Because the VA hospital doctors were treating professionals, their opinions should be accorded superior weight. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)(more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); 20 C.F.R. § 404.1527(d)(2)(in general, a treating physician's opinion as to the nature and severity of an impairment will be given controlling weight if it is well-supported by objective medical evidence and is not inconsistent with the other substantial evidence in the record).

Plaintiff criticizes the ALJ's reliance on Ms. McDonald's opinion, characterizing her as a non-medical source because she was only a "psychology intern."  (Joint Stipulation at 19-20).  However, it is apparent that Dr. Lawrence concurred with Ms. McDonald's evaluation of Plaintiff because she co-signed Ms. McDonald's report.  (AR at 244-48).

Next, Plaintiff asserts that Dr. Lawrence and Ms. McDonald should not be accorded treating source status because there is no indication in the record that they had a treatment relationship with Plaintiff. (Joint Stipulation at 21).  Even if Dr. Lawrence's and Ms. McDonald's opinions are entitled to no greater weight than Dr. Forehand's examining physician opinion, the ALJ acted properly in resolving the conflicting opinions.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

7

Moreover, it is clear from the record that Dr. Ahmad was Plaintiff's treating physician.   Thus, his conclusion that Plaintiff did not meet the criteria for depression (despite a diagnosis of situational depression) was entitled to controlling weight.   (AR at 249-50); *Lester*, 81 F.3d at 831.

The ALJ also noted that Plaintiff was not forthcoming about his ongoing alcohol and marijuana abuse when examined by Dr. Forehand.   (AR at 27).   Plaintiff's lack of candor was a proper basis for rejecting Dr. Forehand's opinion.  *Morgan v. Commissioner of Social Security*, 169 F.3d 595, 602 (9th Cir. 1999)("A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of his symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" (quoting *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989)); *see also Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)(claimant's inconsistent statements regarding her drug use supported the ALJ's finding that "this lack of candor carries over to her description of physical pain").   Further, the ALJ noted that a finding of a severe mental impairment was in conflict with Plaintiff's own description of his daily activities, which included spending most of his day "as a webmaster for a military-type computer game."  (AR at 245); *see, e.g., Morgan*, 169 F.3d at 602-03 (when a claimant's testimony about daily activities is inconsistent with a condition that would preclude all work activity, the ALJ may reject a physician's opinion to the contrary); *Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990).

Accordingly, substantial evidence supports the ALJ's decision to discount Dr. Forehand's and Dr. Balson's opinions and conclude that Plaintiff's mental impairment was not severe.  *See Magallanes*, 881 F.2d at 750 (holding that the ALJ's burden in rejecting a physician's opinion

is satisfied "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings").

**B.    Plaintiff's Residual Functional Capacity**

Plaintiff contends that the ALJ erred by finding that Plaintiff had the residual functional capacity to perform medium work and by rejecting the opinions of his physicians on the issue of whether he had the residual capacity to perform his prior work. (Joint Stipulation at 29-36).

In finding that Plaintiff retained the ability to perform medium work, the ALJ gave great weight to the opinion of Dr. Zu, a non-examining state agency physician. (AR at 198-205). In making this finding, the ALJ rejected the opinion of examining physician, Richard Gluckman, M.D.[2] (AR at 29). The ALJ also rejected a disability finding made by Plaintiff's treating physician, Dr. Ahmad. (AR at 29). In general, the report of a non-examining, non-treating physician, with nothing more, may not be substantial evidence to controvert examining and treating physicians' opinions. *See Lester,* 81 F.3d at 831; *Magallanes*, 881 F.2d at 752. The rejection of the opinion of an examining or treating physician may, however, be based in part on the testimony of a nontreating, non-examining medical advisor, when consistent with other independent evidence in the record. *Morgan*, 169 F.3d at 602. "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence,

---

[2] In October 2004, Dr. Gluckman opined Plaintiff was restricted to sitting no more than two hours in an eight-hour workday, standing/walking no more than two hours in an eight-hour workday, and lifting and carrying no more than 20 pounds occasionally. (AR at 261-62). Dr. Gluckman concluded that Plaintiff was unable to work full time in his former position as a long-haul truck driver. (AR at 254, 258).

stating his interpretation thereof, and making findings." *Magallanes*, 881 F.2d at 750 (internal quotation marks omitted).  Here, Dr. Zu's opinion is consistent with medical evidence from the VA hospital, and in particular, many of the reports and findings of Dr. Ahmad.

Dr. Zu reviewed Plaintiff's VA hospital records and completed a residual functional capacity assessment of Plaintiff in July 2003.  (AR at 198-205).  The VA hospital records revealed that Plaintiff received urgent care for back pain in February 2002.  (AR at 196).  At that time, Plaintiff was diagnosed with mild degenerative disc disease at L4 through S1 and moderate old compression fracture at T12 and L1.  (AR at 196).  On March 4, 2002, Dr. Ahmad saw Plaintiff for follow up treatment.  (AR at 28, 185-86).  Dr. Ahmad noted that Plaintiff had "no active problems on record" and that Plaintiff's back pain was improved with Motrin and Flexeril.  (AR at 185).  In July 2002, Dr. Ahmad reported that Plaintiff's back pain was "under control" with his current medications, with "no untoward effects."  (AR at 182).  Plaintiff next saw Dr. Ahmad eight months later in March 2003.  (AR at 179).  Plaintiff was experiencing cramps, numbness, tingling and pain in his right lower extremity.  (AR at 179).  Dr. Ahmad diagnosed Plaintiff with probable S1 radiculopathy and degenerative disc disease.  (AR at 180).  An MRI of Plaintiff's lumbar spine showed only a minor abnormality, while an electromyography study indicated that Plaintiff suffered from severe right L5 radiculopathy.  (AR at 178-79).  By December 2003, however, Plaintiff reported that his radicular symptoms had improved by 60 percent.  (AR at 249).  Plaintiff also described his back pain as only a 3 out of 10.  (AR at 178).  Dr. Ahmad prescribed anti-inflammatory and pain medication and recommended that Plaintiff exercise.  (AR at 176-77).

10

The VA hospital reports, including Dr. Ahmad's findings, are consistent with Dr. Zu's conclusion that Plaintiff was capable of performing medium work. Thus, the ALJ's decision to rely on Dr. Zu's opinion was supported by substantial evidence. (AR at 198-205); *Morgan*, 169 F.3d at 602; *Magallanes*, 881 F.2d at 750.

While Dr. Ahmad completed a disability form indicating that Plaintiff could not perform his "regular or customary work" for the period February 4, 2002 through March 5, 2003, the ALJ properly rejected that aspect of Dr. Ahmad's opinion. (AR at 29, 186). First, Dr. Ahmad's finding of disability, made just three days after his initial examination of Plaintiff, was not supported by his own treatment notes. (AR at 29, 185-86). As discussed above, Dr. Ahmad reported on March 4, 2002, that Plaintiff had no active problems and that his back pain was improved with medication. (AR 185). The ALJ also found that Plaintiff's minimal treatment was inconsistent with a finding of disability. (AR at 29); *see Flaten v. Secretary*, 44 F3d 1456, 1464 (9th Cir. 1995)(explaining that the ALJ was entitled to draw rational inferences from general lack of treatment in finding the claimant not disabled). Moreover, even if Plaintiff was precluded from performing his "regular and customary work," the record shows that there were other jobs that Plaintiff could perform at the light exertional level, including work as an electrical worker, burr grinder, and office helper. (AR at 33, 305-06). Thus, any alleged error in rejecting Dr. Ahmad's opinion of disability was harmless. *See Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1991)(harmless error rule applies to review of administrative decisions regarding disability).

\\\

\\\

11

**IV.    Conclusion**

    Based upon the applicable legal standards, the Court finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner applied the proper legal standards.

**ORDER**

    Accordingly, **IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

    **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED:   January 18, 2007

_____
MARC L. GOLDMAN
United States Magistrate Judge

12